# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)  Case No. 19 - MJ -6019
HP laptop computer, model 640 G2, )
S/N MXL6383W2F )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the  Central  District of  Illinois , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:
See Affadavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Scott Gamboe
_____
Applicant's signature

SFO, Scott Gamboe, USSS
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by  telephone  *(specify reliable electronic means)*.

s/ Jonathan E. Hawley

Date: 3/8/19

Judge's signature

City and state: Peoria, IL

Jonathan E. Hawley, United States Magistrate Judge
_____
Printed name and title

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Special Federal Officer Scott Gamboe, having been duly sworn, state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a detective with the Peoria County Sheriff's Department, located in Peoria, Illinois and have been employed there from June 1998 to present. I am also a Special Federal Officer through the sponsorship of the United States Secret Service (USSS). I am a member of the United States Attorney's Office Central Illinois Cyber Crime Unit based in Peoria, Illinois.  I have received extensive training in criminal investigations, computer crime investigations, computer and electronic device forensic exams, identity theft, fraud, and child pornography investigations. I have conducted numerous investigations, state and federal, involving computer crimes, identity theft, fraud, and child pornography resulting in arrests and seizures. I have also been involved in the execution of numerous search warrants.  In addition, I am an EnCE certified computer forensic examiner and a CCPA certified mobile device examiner. I hold a BA in Criminal Justice from the University Of Illinois – Springfield.

2. As a Special Federal Officer, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.  During such investigations, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.  I have been involved in numerous child pornography investigations

and am very familiar with the tactics used by child pornography offenders who collect child pornographic material, and those who seek to exploit children.

3. I make this affidavit in support of an application for a search warrant for an HP laptop computer, model 640 G2, serial number MXL6383W2F. I have probable cause to believe that contraband, evidence, fruits, and instrumentalities, or property designed for use in committing a crime, namely violations of 2252A(a)(5)(B) (possession of child pornography), are located within the target computer. I submit this application and affidavit in support of a search warrant authorizing a search of the entirety of the data contained within the target computer, as further described and depicted in Attachment A, which is located in Peoria, Illinois, in the Central District of Illinois.

4. I request authority to search the entire computer and all electronic data contained therein, as described in Attachment A, for items specified in Attachment B (which is incorporated herein by reference) which may be found, and to seize all items listed in Attachment B as contraband, evidence, fruits, and instrumentalities of a crime.

5. This affidavit is based on information I have gained from my investigation, as well as information provided by other law enforcement agents and others involved in this and other investigations. Because I am submitting this affidavit for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband,

evidence, fruits and/or instrumentalities of violations of, or property designed for use in violating 18 U.S.C. §§ 2252A(a)(5)(B) are located within the listed computer.

## DEFINITIONS

6. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and Attachment B:

   a. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(1).

   b. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

   c. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code

that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

d. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

e. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. It commonly includes programs to run operating systems, applications, and utilities.

f. "Internet Protocol Address" or "IP Address," as used herein, refers to a unique number used by a computer to access the Internet.  IP Addresses can be "dynamic," meaning that the Internet service provider assigns a different unique number to a computer every time it accesses the Internet.  IP Addresses might also be "static," if an Internet service provider assigns a user's computer a particular IP Address that is used each time the computer accesses the Internet. IP Addresses are registered to specific individuals or entities, such as an Internet service provider. When a subscriber of an Internet service provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP Address which identifies that account holder on the Internet. By providing the Internet service provider with the dates, times and IP Addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP Address, at that date and time, if the records still exist on their system.

g. "Internet service providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses

      access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

  h. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, such as electrical, electronic or magnetic form (including, but not limited to, tape recordings, compact discs, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, or electronic notebooks, as well as digital data files from any magnetic, electrical or electronic storage device).

### BACKGROUND ON COMPUTERS, DIGITAL MEDIA & CHILD PORNOGRAPHY

7. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, computers, computer technology, other digital electronic storage devices, and the Internet have revolutionized the manner in which individuals seek to access and exploit children, as well as their ability to produce, distribute, and collect child pornography. Moreover, with the advancement of so-called "smart" mobile phones, which perform the same functions, and often employ the same programs, as computers, users are able to transport, conceal, and have almost constant access to the Internet. Smart phones also enable consistent and real-time communication over a number of electronic, audio, and video platforms.

8. Computers and other digital electronic media basically serve five functions in the realm of child pornography and child exploitation: production, communication, distribution, storage, and social networking.

9. Child pornographers can transpose photographic images from a camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer, and other digital media. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

10. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. In addition, electronic devices such as smart phones (e.g., Apple iPhones), connected devices (e.g., Apple iTouch), e-readers, and tablets (e.g., Apple iPads, Kindle Fire) now function essentially as computers with the same abilities to store images and videos in digital form.

11. The Internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

12. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer or device with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer or device. Even in cases where online storage is used, in most cases evidence of child pornography can be found on the user's computer or device.

13. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an email as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost.

Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

14. Because the attempted enticement and coercion of minors is illegal, as is the production, receipt, distribution, and possession of child pornography, individuals who seek sexual gratification from the exploitation of children must be cautious about their communications and online activity. An individual can use the computer or other digital electronic media in the privacy of his/her own home or office to locate and

interact with other like-minded individuals, including individuals trading in child pornography. Moreover, an individual can do so without revealing his/her true identity. The use of computers and other digital electronic media devices provide individuals interested in child exploitation with a convenient method of storing their communications, information about the others with whom they communicate, and their child pornography collections.

15. Searches and seizures of evidence from smart phones, computers, and other digital devices commonly require agents to download or copy information from the device to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following three reasons:

   a. Computers, smart phones and computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. When the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

   b. Searching digital devices for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of available hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.

c.  The search of a computer system, and other digital devices, is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since this evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

### Internet Protocol Address

16.  The Internet is a worldwide system of computer networks - a network of networks - in which users at any one computer can, if they have permission, get information from any other computer (and sometimes talk directly to other computer users).

17.  An Internet Protocol address (also known as an IP address) is a set of numbers which identify a computer on the Internet.  Standard IPV4 IP addresses follow the format of ###.###.###.###[1]  wherein each of the numbers are between 0 and 255.  Computers use IP addresses to identify each other on the Internet. Internet Protocol addresses are registered to specific individuals or entities, such as an Internet service provider.

18.  When a subscriber of an Internet service provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP address which identifies that account holder on the Internet.  By providing the Internet service provider with the dates, times and IP addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP address at that date and time, if the records still exist on their system.

---

1       As set in the protocol TCP/IP V4 which is the common usage today.

## BACKGROUND OF INVESTIGATION AND PROBABLE CAUSE

19. On March 4, 2019, I spoke to LT Gregory Clampitt of the Illinois Air National Guard (IANG). LT Clampitt also serves as a deputy with the Peoria County Sheriff's Department. He informed me that the IANG had requested my assistance in the investigation of the possible possession of images of child pornography contained on a U.S. Government-owned laptop computer.

20. SMSGT Peter MILLER, a member of the IANG, had been assigned the HP laptop described in Attachment A. According to COL Cory Reid of the IANG, the laptop was assigned solely to MILLER. In order to access the computer, MILLER's identity card had to be inserted, and MILLER's password had to be entered. When the computer is first activated, a screen appears that declares the computer to be the property of the United States Government, and declares that the user has no right to privacy on the device. MILLER was authorized to remove the computer from the IANG base in Bartonville, IL, and take it to his residence. This computer does not contain classified information.

21. Continuing on March 4, 2019, I met with LT Clampitt, along with COL Cory Reid and others, at the IANG base in Bartonville, Illinois. LT Clampitt provided me with documentation on their investigation. LT Clampitt told me that the laptop assigned to SMSGT MILLER had ceased functioning properly, so on January 29, 2019, MILLER turned

the laptop over to MSGT Scott Swanson of the IANG. Swanson works in the Network Communication Center (NCC).

22. MSGT Swanson discovered that the computer had been infected with malware. In his efforts to remove the malware, Swanson discovered image files he believed to contain child pornography. He informed COL Reid about his findings.

23. I spoke to MAJ Charles Schierer about the investigation. Schierer told me that as an attorney, he had both prosecuted and defended cases involving child pornography for a decade, and therefore could recognize images that met the federal definition for child pornography. Schierer said that he was contacted by COL Reid and was asked to examine the images himself. According to Schierer, the computer was located within a secure vault at the IANG base. MSGT Swanson activated the computer and showed Schierer the images, and Schierer confirmed that in his opinion, the images met the federal definition for child pornography. Schierer described two of the images as displaying nude females, approximately 8-10 years of age, with the focal point of both images being the females' exposed genitals.

24. LT Clampitt informed me that thousands of images had been located, but their examination stopped upon the discovery of images believed to contain child pornography. The examination by MSGT Swanson and MAJ Schierer only included 100-150 images. These images included nude images of age-difficult females, as well as partially-clothed prepubescent females in "sexually suggestive" poses.

## CONCLUSION

66.     Based on the above information, there is probable cause to believe that the items described in Attachment B are presently located within the listed computer, as set forth and depicted in Attachment A and the digital media therein, and that these items constitute contraband, evidence, fruits, and instrumentalities, as well as property designed for use in committing a crime, and namely violations of 18 U.S.C. §§ 2252A(a)(5)(B) (possession of child pornography). Accordingly, I respectfully request that the Court authorize the search of the listed computer and the seizure of the contraband, evidence, fruits, and instrumentalities of the above violations of federal law.

s/ Scott Gamboe

SCOTT GAMBOE
Special Federal Officer

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on March 8, 2019.
s/ Jonathan E. Hawley

HONORABLE JONATHON HAWLEY
UNITED STATES MAGISTRATE JUDGE
CENTRAL DISTRICT OF ILLINOIS

**ATTACHMENT A**
**DESCRIPTION OF LOCATION TO BE SEARCHED**

The target computer is located at the United States Attorney's Office, Peoria, Illinois, within the Central District of Illinois. The target computer is described as an HP laptop computer, model 640 G2, serial number MXL6383W2F. The target computer is contained within a secure evidence area.

The search is to include all electronic data stored on any media found within the target computer, including, but not limited to, hard drives, non-volatile memory, USB drives, and other storage media.



**ATTACHMENT B**
**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

1. From the items listed above, any stored messages; stored photographs/videos; Internet web history; Internet search history; Internet bookmarks; personal information regarding the user; and any information relating to the possession of child pornography, as defined in 18 U.S.C. § 2252A(a)(5)(B).

2. Evidence identifying individual(s) who used, owned, or controlled the electronic device(s) and computer(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chats," instant messaging logs, photographs, and Internet Service Provider accounts.

3. Any and all notes, documents, records, computer files or correspondence, in any format and medium (including, but not limited to, email messages, chat logs and electronic messages) pertaining to the possession of child pornography, as defined in 18 U.S.C. § 2252A(a)(5)(B), including communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography or membership in online groups, clubs, or services that provide or make accessible child pornography to members.

4. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, electronic documents, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.